IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNY SUNDELIN,<br><br>Petitioner,<br><br>vs.<br><br>RONALD GRASMICK,<br><br>Respondent. | 4:26-CV-3219<br><br>MEMORANDUM AND ORDER |

The petitioner, Jenny Sundelin, alleges that her children have been wrongfully removed from Sweden to Nebraska by their father, respondent Ronald Grasmick. *See* filing 1. She petitions for their return to Sweden pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention"), Oct. 25, 1980, 1343 U.N.T.S. 89, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001-11. *See* filing 1. She has also filed a motion "for expedited hearing, emergency enforcement of Article 21 right of access, and authorization for remote participation." Filing 1-1 at 36-45.

The Court now conducts an initial review of the mother's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. See § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. § 1915(e)(2)(B). Upon careful review, the Court will dismiss the petition.

## I. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A *pro se* complaint must be liberally construed, and *pro se* litigants are held to a lesser pleading standard than other parties. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). This means that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the Court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. BACKGROUND

The following narrative is taken from the complaint and the attachments to the complaint.[1]

---

[1] The Court may consider exhibits attached to the complaint. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). The Court may also take notice of public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). And with respect to an application or petition under ICARA, "or any other documents or information included with such application or petition . . . which relates to the application or petition . . . no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court." § 9005.

The mother is from Sweden. Filing 1 at 6. The father is from the United States. Filing 1 at 6, 94. The parties met in 2005 and lived together in the United States, but in 2007 the mother returned to Sweden and married another man. Filing 1 at 94. That marriage ended in 2011 and the parties apparently rekindled their relationship at some point because, in 2012, the father moved to Sweden and the parties were married. Filing 1 at 95. Two children were born of that marriage, in 2012 and 2016. Filing 1 at 109.

The parties separated in 2017 and divorced in 2018. Filing 1 at 68, 95. The Swedish district court entered a consent judgment in 2019 pursuant to which the father was awarded sole custody of the children, subject to regular visitation in Stockholm. Filing 1 at 66. But in August 2020, the father and children traveled to the United States to attend a family wedding. Filing 1 at 95. They were allegedly unable to return due to the COVID-19 pandemic, and the father decided to remain in the United States. Filing 1 at 95.

The mother alleges that she had, at the time of the 2020 removal, "initiated new proceedings" in the Swedish district court "to expand her parenting time." Filing 1 at 10. Following the removal, the father sought to have the mother's new action dismissed or, in the alternative, have the mother's visitation rights terminated entirely. Filing 1 at 91. The mother sought joint custody. Filing 1 at 91. In a December 4, 2020 decision, the Swedish court dismissed the father's request but, as far as the Court can tell, confirmed that "[a]s the sole guardian, [the father] decides where he wants to live with his [children]." Filing 1 at 95-96. There were apparently subsequent legal proceedings in the Swedish courts, *see* filing 1 at 21, but they're not reflected in the record in significant detail.[2]

---

[2] Not all of the Swedish documents are before the Court, and the Court is left to infer some of the steps taken in the convoluted legal proceedings between the parties which have

The Swedish court apparently entered a decree in 2021 expressly addressing the children's travel to and from Sweden for visitation. *See* filing 1 at 52. The mother alleges that in 2022, frustrated by the inability of the Swedish courts to enforce her rights, she "made a deliberate decision . . . to shift to Nebraska courts." Filing 1 at 12. She withdrew her claims in the Swedish court, *see* filing 1 at 52, and registered the Swedish judgment in the District Court of Lancaster County in September 2023, *see* filing 1 at 71. The mother petitioned the Lancaster County court to modify the decree, most saliently seeking joint custody, and the father objected to that court's jurisdiction but also cross-petitioned for child support. *See* filing 1 at 54-55.

Eventually, on December 22, 2025, the Lancaster County court entered an order modifying the decree. Filing 1 at 70. Specifically, the state court ordered (apparently with the parties' agreement) that the temporary parenting plan previously approved by that court would become the final parenting plan. Filing 1 at 71. That plan awarded the parties joint legal custody, while physical custody and place of residence remained with the father. Filing 1 at 77. The state court also allocated the costs associated with visitation between the parties, and ordered the father to pay costs associated with the mother's summer 2024 trip to the United States. Filing 1 at 72-73.

The father appealed from that order. *See* filing 1 at 47. His brief, filed on June 5, 2026, asserts that the state court lacked jurisdiction to modify the Swedish decree. Filing 1 at 4, 44-63.

In the meantime, in February 2026, the mother had moved the Lancaster County court to hold the father in contempt for, among other things, his failure to purchase airline tickets for the children to travel to Sweden for visitation.

---

occurred over several years and in several courts. But what the Court has is enough to resolve the mother's ICARA claim, even if the Court can't put together a complete narrative.

Filing 1 at 98-107. In March, the state court granted that motion and found the father in contempt, and sentenced him to a 30-day sentence of incarceration unless he purged his contempt by, among other things, complying with the parenting plan and purchasing air travel for the children for parenting time between June 28 and July 31, 2026. Filing 1 at 105. On June 26, the state court issued a bench warrant for the father's arrest, finding that he had failed to purge his contempt. Filing 1 at 111-17. He was apparently arrested on July 10. Filing 1-1 at 15.

The contempt order also provided that "[o]nce incarcerated, [the father] may purge himself of contempt and be released upon the payment of $5,000." Filing 1 at 107. After being arrested, he apparently paid that sum to the Clerk of the Lancaster County District Court. Filing 1-1 at 15. The father moved the state court to stay payment of that sum to the mother pending the outcome of his appeal, and more generally to stay "any continued proceedings for enforcement, execution, or modification of, or declaratory relief in respect to, the court's December 22, 2025 'Order of Modification.'" Filing 1-1 at 7-17. On July 17, the state court granted that motion. Filing 1-1 at 25-26. The court stayed "[a]ll matters . . . until the jurisdictional issue is resolved by the Nebraska Court of Appeals." Filing 1-1 at 25.

The mother has also been litigating back in Sweden. In an apparent attempt to demonstrate that the Lancaster County court actually had jurisdiction, the mother filed a motion in the Swedish court asking for "custody, residence, and access." Filing 1-1 at 30. As the Swedish court explained,

> Her intention has not been to get the Swedish courts to take over ongoing custody proceedings in Nebraska or to replace the American courts. On the contrary, a central part of the lawsuit is to clarify that the Swedish courts no longer have jurisdiction over

> the custody, residence and access of the children, since the issues are heard by the District Court of Lancaster County in Nebraska. Rather, a Swedish clarification is needed now, since the claim of continued Swedish jurisdiction is being used against her in the latest American lawsuits.

Filing 1-1 at 31. On July 21, 2026, the Swedish court agreed with the mother and dismissed her action for modification, finding that because the father and the children had been domiciled in the United States since 2020, "the Swedish court does not have jurisdiction to hear [the mother's] claims regarding custody, residence and access regarding [the children]. Filing 1-1 at 32-33.

This petition followed. Filing 1. The mother alleges that the children were wrongfully removed from Sweden and wrongfully retained in the United States. Filing 1 at 14. She asks the Court to order the children to be returned to Sweden pursuant to the Hague Convention and ICARA. Filing 1 at 19. She also requests injunctive relief ordering the father to facilitate contact, obtain Swedish passports and identity documents for the children, ensure they have access to medical care, and stop obstructing her rights. Filing 1 at 21. Specifically, she asks the Court to enjoin the father from pursuing any actions in Nebraska state court that would have the effect of interfering with her rights under the parties' state court parenting plan, and enjoin the Lancaster County district court from doing anything with the $5,000 being held in its registry. Filing 1 at 22. More generally, the mother is asking this Court (in very express terms) to enforce the Lancaster County court's order. Filing 1 at 22-23.[3]

[3] Ordinarily, the Court might be obliged to enjoin the state court custody proceeding upon receipt of a petition under the Convention:

In the more immediate term, the mother alleges that she will be in Lincoln, Nebraska from July 28 through August 15, 2026, because that's "the only window in which she and the children's sister can travel before the Swedish school year begins." Filing 1 at 23. So, she moves the Court to

> [i]ssue an emergency order compelling [the father] to present the minor children . . . to [the mother] for the court-ordered parenting window of July 28, 2026 through August 15, 2026, pursuant to Article 21 of the Hague Convention and 22 U.S.C. § 9003, given that all state-court enforcement mechanisms have been suspended by the July 17, 2026 Order of the Lancaster County District Court[.]

Filing 1-1 at 42.

## III. DISCUSSION

The Hague Convention entitles a person whose child has wrongfully been removed to or retained in the United States to secure the prompt return of the child to the child's country of habitual residence, unless the respondent can establish that an affirmative defense applies. *Dubikovskyy v. Goun*, 54 F.4th 1042, 1047 (8th Cir. 2022). The primary purpose of the Hague Convention is to

---

> After receiving notice of a wrongful removal or retention of a child . . . the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention . . . .

The Convention, art. 12. But there is no basis to do so here, where the mother is relying on the state proceedings, and actually complaining about the state court's stay of its own order.

restore the *status quo ante* and to deter parents from crossing international boundaries in search of a more sympathetic court. *Id*. It is the Convention's core premise that the interests of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence. *Id*.

### 1. Removal/Retention Claim

But to begin with, neither a wrongful removal nor a wrongful retention claim will lie here. Although the mother purports to allege both, *see* filing 1 at 14, they are mutually exclusive. "Typically, wrongful removal involves a parent unilaterally taking children from the habitual residence without the knowledge or permission of the other parent," while "[c]ases dealing with wrongful retention frequently involve a party leaving the child's habitual residence with the child for an agreed-upon visit or vacation in another country." *See* James D. Garbolino, *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* § III.D.2 (Fed. Jud. Ctr. 3d ed. 2023). The circumstances here seem to be more akin to a wrongful retention. *See* filing 1 at 11.

That distinction is mostly academic,[4] because the *prima facie* case remains the same. *See* § 9003(e)(1). In a proceeding under ICARA, it's the

---

[4] The difference between retention and removal is in establishing the date of the wrongful removal or retention. Garbolino, *supra*, at § III.D.2. The difference is important because if the petition is filed less than a year after the wrongful removal or retention, return is mandatory, but after a year, defenses to return are available. *See* the Convention, art. 12.

The mother insists that the date of wrongful retention here is June 24, 2025, and that "[l]ess than one year has elapsed between the June 24, 2025 commencement of wrongful retention and the filing of this Petition." Filing 1 at 18. But that's not how calendars work, when the petition was filed on July 23, 2026. It's also not how the Convention works, because

petitioner's burden to establish, by a preponderance of the evidence, that a child has been wrongfully removed or retained within the meaning of the Convention. § 9003(e)(1); *see Golan v. Saada*, 596 U.S. 666, 671 (2022); *Alzu v. Huff*, 165 F.4th 1073, 1076 (8th Cir. 2026). Generally, to establish a *prima facie* case for return under ICARA and the Convention, the mother must establish by a preponderance of the evidence that (1) immediately prior to removal or retention, the children habitually resided in Sweden; (2) their removal or retention was in breach of her custody rights under Swedish law; and (3) she was exercising those custody rights at the time of the removal. *Dubikovskyy*, 54 F.4th at 1047; *Barzilay v. Barzilay*, 600 F.3d 912, 917 (8th Cir. 2010). The Convention is an anti-abduction treaty; it is not a treaty on the recognition and enforcement of foreign decisions on custody. *Redmond v. Redmond*, 724 F.3d 729, 739 (7th Cir. 2013) (citing *Barzilay*, 600 F.3d at 921-22). Its procedures are not designed to settle international custody disputes, but rather to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases. *Id*.

---

wrongful retention exists with reference to the child's place of habitual residence. *See Pope on behalf of T.H.L-P v. Lunday*, No. 19-CV-1122, 2019 WL 7116115 (W.D. Okla. Dec. 23, 2019), *aff'd,* 835 F. App'x 968 (10th Cir. 2020); *cf. Golan*, 596 U.S. at 670 n.1 (citing the Convention, art. 3) (wrongful retention breaches existing custody rights under the law of the contracting state in which the child was habitually resident *immediately before* the retention). Courts look to the last date upon which it is undisputed that the child was present in the new country with both parents' permission. *McKie v. Jude*, No. 10-CV-103, 2011 WL 53058, at *6 (E.D. Ky. Jan. 7, 2011). In this case, that would be sometime in 2020. Filing 1 at 10-11. And the date of wrongful removal is certainly no later than the date that either parent commences legal action to either modify custody or have the child returned. *See Abou-Haidar v. Sanin Vazquez*, 419 F. Supp. 3d 1, 11 (D.D.C.), *aff'd,* 945 F.3d 1208 (D.C. Cir. 2019). In this case, that was no later than December 2020. *See* filing 1 at 90-96.

Accordingly, the Court isn't bound to return a child if the mother consented to, or subsequently acquiesced, in the removal or retention. The Convention, art. 13(a). "Crucially, consent for a particular tribunal to make a final custody determination . . . suffices to establish an affirmative defense under the Convention." *Larbie v. Larbie*, 690 F.3d 295, 309 (5th Cir. 2012), *abrogated on other grounds by*, *Monasky v. Taglieri*, 589 U.S. 68 (2020) (collecting cases). And here, the mother more than consented to the Lancaster County District Court's resolution of custody issues between the parties. She registered the judgment in Lancaster County herself; she agreed to a stipulated parenting plan pursuant to which the children would live in Lincoln, Nebraska; and she insists even now that the December 22, 2025 order of the state court approving that parenting plan is valid. Filing 1 at 23. It's difficult to imagine conduct that more squarely reflects acquiescence to the children residing in the United States than agreeing to and defending a court order establishing their residency in the United States. *See Larbie*, 690 F.3d at 310; *see also Staggers v. Timmerman*, 746 F. Supp. 3d 635, 642-43 (S.D. Iowa 2024).

2. RIGHT OF ACCESS CLAIM

But the mother also seeks—both as final relief and as a provisional remedy—enforcement of access and visitation under the Convention. Filing 1 at 33-35. Courts are divided over whether ICARA provides a private right of action for such a claim. *Contrast Ozaltin v. Ozaltin*, 708 F.3d 355, 374 (2d Cir. 2013) (holding that § 9003(b) permits an aggrieved party to petition for rights of access to a child), *and Taveras v. Taveraz*, 477 F.3d 767, 777 n.7 (6th Cir. 2007) (ICARA "does provide for judicial remedies for non-custodial parents, namely for rights of access claims"), *with Cantor v. Cohen*, 442 F.3d 196, 204 (4th Cir. 2006) ("federal courts lack jurisdiction to hear access claims"). The Eighth Circuit has not weighed in on the question.

But assuming without deciding that the Court has jurisdiction to consider a right-of-access claim under ICARA and the Convention, the mother's particular claim is without merit, for two reasons.

(a) *Prima Facie* Claim

First, the mother hasn't established a *prima facie* right-of-access claim. A petitioner in an ICARA case must show by a preponderance of the evidence, "in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights." § 9003(e)(1)(B). In other words, the mother—who is relying on the Lancaster County district court's authority—must show that she has a right of access according to that court. And she doesn't. She's relying on the December 22, 2025 parenting plan order for visitation rights. But the court which entered that order has stayed its enforcement. The mother has no present legal right of access arising from a stayed order.[5]

(b) Scope of the Convention

Second, the mother's claim lies outside the scope of the Convention. If a federal cause of action for right of access exists, it's "a federal right of action to secure the effective exercise of rights of access protected under the Hague Convention." *Ozaltin*, 708 F.3d at 372. And the object of the Convention is "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." The Convention, art. 1(b); *see Golan*, 596 U.S. at 670.

[5] The mother concedes that her request for visitation starting next week isn't even precisely what the Lancaster County district court ordered. *See* filing 7. But the Court assumes without deciding that a generalized right to visitation would suffice.

In other words, what the Convention would protect is respect in the United States for a petitioner's rights under Swedish law. It's simply not meant to enforce a petitioner's rights under Nebraska law to visitation in Nebraska, despite the fact that the petitioner lives in another country. *Cf. Matrai v. Hiramoto*, No. 20-CV-5241, 2020 WL 7342718, at *7 (N.D. Cal. Dec. 14, 2020), *aff'd and remanded,* No. 21-15084, 2021 WL 5276021 (9th Cir. Nov. 12, 2021). The mother invoked the jurisdiction of the Lancaster County district court, and expressly disclaimed the jurisdiction of the Swedish courts. The Convention is not there to provide her a remedy for her frustration with the state court.

(c) *Rooker-Feldman* Doctrine

The fact that she's in federal court because she's unhappy with the state court provides another, independent basis to dismiss her access claim. The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The *Rooker-Feldman* doctrine generally applies where a case is brought by the losing party in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Ultimately, "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (citation and internal quotations omitted).

*Rooker-Feldman* is, however, a narrow doctrine that does not extend to a case merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Only where the

alleged injury for which a plaintiff seeks redress stems directly from the state court judgment itself, *rather than from some separate injury caused by the defendant*, does the federal court have no jurisdiction to review. *Skit Intern., Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (emphasis added). Therefore, the crucial inquiry in determining if a claim is so inextricably intertwined with a state judgment that it cannot be heard by a federal court has been explained as hinging upon a determination of "whether the federal plaintiff seeks to set aside a state court judgment or whether he [or she] is, in fact, presenting an independent claim." *Brokaw*, 305 F.3d at 664-65 (citation omitted).

Under the unique circumstances of this case, the *Rooker-Feldman* doctrine precludes the mother's right-of-access claim. The state district court ordered the following:

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Clerk of the District Court shall not disburse the $5,000.00 paid to the Court on or about July 14, 2026, until further order of the Court. All matters are stayed until the jurisdictional issue is resolved by the Nebraska Court of Appeals.

Filing 1-1 at 25. The mother is asking the Court to undo that order:

> Petitioner invokes the superior authority of this federal Court specifically because the state-level execution mechanism has been deliberately deadlocked by Respondent's procedural conduct. This Court is not being asked to create new terms; it is being asked to enforce what [the state court judge] already ordered, at a level of authority Respondent's pending appeals cannot suspend.

Filing 1 at 23. She is, in other words, asking this Court as a "superior authority" to set aside the state court's ruling staying enforcement.

(d) *Younger* Abstention

For related reasons, abstention pursuant to *Younger v. Harris* is appropriate. 401 U.S. 37, 43-44 (1971). In *Younger*, "the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances." *See Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir. 1996). There are essentially three issues that must be addressed in determining whether to invoke the *Younger* doctrine: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise the federal issues. *See Middlesex v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Id.* at 435.

The Court recognizes that "the law in this circuit does not favor abstention in Hague Convention cases." *Barzilay*, 536 F.3d at 852-53. But the mother's right-of-access claim in this case is not typical of Hague Convention cases. The issue presented by the mother's right-of-access claim isn't whether to return the children to Sweden while the parties litigate their custody dispute in state court—it's whether to enforce the state court's operative custody order while the parties litigate their custody dispute in state court.

The intertwining of such issues in state and federal court is one of the reasons why the Fourth Circuit, at least, concluded that federal law doesn't provide for right-of-access claims. *See Cantor*, 442 F.3d at 202-05. But even if

such claims are cognizable in federal court, they shouldn't involve the federal court poking its nose into the state trial court's decision to stay its own order pending appeal. The mother's remedy for that order is to seek appellate relief in state court, or to ask the state trial court for visitation.[6]

## IV. CONCLUSION

For the reasons stated above, the mother has failed to state a claim for relief under ICARA and the Convention. Her six-year-old removal/retention claim is without merit because she undoubtedly acquiesced to the Lancaster County District Court deciding the parties' custody issues and to the state court decree establishing the children's residence in Nebraska. Her right-of-access claim, seeking to enforce a Nebraska court order that's been stayed by the Nebraska court that issued it, is without merit because she has no legal rights arising from a stayed order, and because any such rights would fall outside the scope of the Convention. Additionally, the mother's right-of-access claim is barred by the *Rooker-Feldman* doctrine and subject to *Younger* abstention. Accordingly,

IT IS ORDERED:

1. The mother's petition is dismissed for failure to state a claim under ICARA or the Convention.

[6] The mother reads the state court's order as precluding any enforcement of the parenting plan, but as far as the Court can tell, the issues the state court was considering involved sending the children to Sweden. Although it's possible, the Court isn't certain that the state district court intended to cut off the possibility of visitation in Nebraska. But that would be a question for the state court.

2. The mother's motion for an emergency order (Filing 1-1 at 36-45) is denied as moot.

3. The mother's motion for summons (filing 3) is denied as moot.

4. A separate judgment will be entered.

Dated this 25th day of July, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge